UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUAN WESTLEY,

                              **Plaintiff,**

v.                                                           8:16-CV-01102
                                                             (NAM/DJS)

**ARNOLD J. BURDO,**

                               **Defendant.**
_____

**APPEARANCES:**

Plaintiff *Pro Se*
Quan Westley
185 Wortman Avenue, Apt. 14C
Brooklyn, New York 11207

For Defendants:
Barbara D. Underwood
Attorney General for the State of New York
Omar J. Siddiqi, Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Norman A. Mordue, Senior United States District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff *pro se* Quan Westley ("Plaintiff") brings this action under 42 U.S.C. § 1983 against his former Parole Officer, Arnold Burdo ("Defendant"), alleging constitutional violations arising from the revocation of Plaintiff's post-release supervision, and a related state law defamation claim. (Dkt. No. 12). Now before the Court is Defendant's motion for summary judgment on all claims against him, (Dkt. No. 42), and Plaintiff's papers in opposition to the motion. (Dkt. Nos. 45, 50). For the following reasons, Defendant's motion is granted.

1

## II. BACKGROUND

### A. Procedural History

On January 6, 2017, United States Magistrate Judge Daniel J. Stewart issued a Decision and Order, after screening Plaintiff's pleadings pursuant to 28 U.S.C. § 1915(e), directing the Clerk of the Court to amend the Docket by combining Plaintiff's Amended Complaint (Dkt. No. 7) with Plaintiff's Second Amended Complaint (Dkt. No. 9) to become Plaintiff's Third Amended Complaint (Dkt. No. 12). (Dkt. No. 11, pp. 2–3). Judge Stewart concluded that "[t]hough the facts alleged are wafer thin, it appears to this Court that Plaintiff is attempting to assert a claim against Defendant Burdo, his parole officer, for providing false evidence which resulted in Plaintiff's loss of freedom and wages." (*Id.*, p. 2).

### B. Record Before the Court

With Defendant's motion for summary judgment, Defendant provided Plaintiff with a copy of the Northern District of New York's "Notice to Pro Se Litigants Opposing Summary Judgment." (Dkt. No. 42, pp. 3–4). That notice advised Plaintiff, among other things, that "[t]he claims you assert in your Complaint may be dismissed without a trial if you do not respond to this motion by filing your own sworn affidavits or other papers as required by Rule 56(e)." (*Id.*) The notice further states that "[plaintiff] may not oppose summary judgment simply by relying on the allegations in [plaintiff's] complaint. Rather, [plaintiff] must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial." (*Id.*)

Plaintiff submitted a response in opposition to Defendant's motion, along with a letter asserting additional factual allegations that were not previously provided within Plaintiff's initial

2

pleadings. (Dkt. Nos. 45, 50). Plaintiff's papers dispute certain facts put forward by Defendant, but Plaintiff fails to rebut many of the key facts that form the basis for Defendant's motion.

Under these circumstances, the Court may accept Defendant's statement of facts as true where appropriate, supported by the record, and unchallenged by Plaintiff with admissible evidence. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (reasoning that even *pro se* litigants "should be on notice from the very publication of Rule 56(e) that a party faced with a summary judgment motion may not rest upon the mere allegations or denials of the party's pleading and that if the party does not respond properly, summary judgment, if appropriate, shall be entered against him") (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *Riehl v. Martin*, No. 13 Civ. 439, 2014 WL 1289601, at *5, 2013 U.S. Dist. LEXIS 186610, at *12, (N.D.N.Y. Dec. 19, 2013) ("Where, as here, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion."), *report-recommendation adopted*, 2014 WL 1289601, 2014 U.S. Dist. LEXIS 42870 (N.D.N.Y. Mar. 31, 2014).

While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Therefore, the following facts are largely taken from Defendant's declaration and statement of facts, (Dkt. Nos. 42-6, 42-9), where supported by the record, as well as

3

Plaintiff's submissions in opposition. (Dkt. Nos. 45, 50). The Court construes the facts in the light most favorable to the Plaintiff.

**C. Facts**

On or about August 22, 2014, Plaintiff was released on five years' post-release supervision after serving three years of a four-year sentence in state prison for assault in the second degree. (Dkt. Nos. 42-2; 42-4, p. 52:16–20). At all relevant times, Plaintiff was a parolee under the supervision and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 42-9, ¶ 1). Upon his release from prison, Plaintiff agreed to comply with certain mandatory requirements under Plaintiff's Special Conditions of Release to Parole Supervision. (Dkt. No. 42-2). The relevant conditions at issue here were the requirements that Plaintiff: 1) refrain from the use, possession or purchase of alcoholic beverages; and 2) abide by a curfew and to not leave his designated residence after his curfew. (Dkt. No. 42-2, ¶¶ 13a, 13c).

On or about April 15, 2015, Plaintiff was assigned to Defendant Parole Officer Arnold J. Burdo's parole supervision case-load. (Dkt. No. 42-6, ¶ 19). Defendant was required to supervise Plaintiff to ensure that Plaintiff remained in compliance with the conditions of his release, to investigate any alleged parole violations or criminal behavior, and to execute any parole warrants or other warrants issued for Plaintiff's arrest. (Dkt. No. 42-6, ¶ 21).

On May 12, 2015, Defendant performed a curfew check on Plaintiff, where Defendant discovered that Plaintiff was not in his home during curfew hours—a violation of Plaintiff's conditions of release. (Dkt. No. 42-6, ¶ 23). Plaintiff has admitted to violating his required curfew on at least that one occasion. (Dkt. No. 42-4, p. 61:4–7). As a result, Defendant placed Plaintiff under GPS monitoring using an Electronic Monitoring Unit ("EMU") to track Plaintiff's

compliance with the curfew-related conditions of his parole. (Dkt. No. 42-6, ¶¶ 5, 7, 24). The GPS EMU systems transmit information to "Veritracks," a software system that is owned and operated by Satellite Tracking of People, LLC. (*Id.*, ¶ 7). The Veritracks software issues an e-mail alert to the parole officer whenever a parolee has gone beyond the established boundaries set within their curfew hours. (*Id.*, ¶ 16).

Beginning on May 15, 2015, Defendant began receiving alerts and information through DOCCS's tracking system indicating that Plaintiff was violating his curfew. (Dkt. No. 42-9, ¶¶ 7–15). Plaintiff disputes that he violated curfew on many of these occasions. (Dkt. No. 50, pp. 2, 10–11). He also alleges that the GPS unit was not working properly and gave false readings. (Dkt. No. 45, p. 1). On June 18, 2015, Defendant located Plaintiff at 48 South Platt Street in Plattsburgh, New York, where he found Plaintiff and an associate in a parked vehicle. (Dkt. No. 42-9, ¶¶ 19–22). At that time, Defendant suspected that Plaintiff had consumed alcohol in violation of the conditions of Plaintiff's parole. (Dkt. No. 42-6, ¶¶ 40–44). Defendant directed Plaintiff to return to Plaintiff's residence so that Defendant could determine whether there was alcohol at Plaintiff's residence. (*Id.*, ¶¶ 40–44). Upon their arrival at Plaintiff's residence, Defendant could smell alcohol on Plaintiff's breath and subsequently conducted a test which determined Plaintiff's blood alcohol level to be 0.03. (*Id.*, ¶¶ 45–47). Plaintiff admitted to consuming at least one wine cooler earlier in the day. (*Id.*, ¶ 48). At that point, Defendant transported Plaintiff to the Plattsburgh Field Office, where an additional blood alcohol test indicated Plaintiff's blood alcohol level was 0.036. (*Id.*, ¶ 49). Plaintiff was then taken into custody pursuant to a parole warrant and transported to Clinton County Jail. (*Id.*, ¶ 52).

On or about June 18, 2015, Defendant prepared a Violation of Release Report, charging Plaintiff with eleven violations of the conditions of his release, including curfew and alcohol-

related violations. (Dkt. No. 42-3). On July 15, 2015, Plaintiff appeared with counsel before an administrative law judge at a parole revocation hearing at the Clinton County Jail. (Dkt. No. 42-9, ¶¶ 24–25). At that hearing, Plaintiff pled guilty to Charge 11 of the Violation of Release Report: "On June 18, 2015, at about 12:35 p.m. at 5411 Peru Street in Plattsburgh, NY, parolee Westley violated Condition #13C of his Special Conditions of Release to Parole Supervision when he tested positive and admitted to consuming alcohol." (Dkt. Nos. 42-3, p. 2; 42-5, pp. 4:19–5:4). All curfew-related parole violations were dismissed with prejudice. (Dkt. No. 42-5, pp. 4:4–5:8). Consistent with the joint sentencing recommendation of the parties, the administrative law judge accepted Plaintiff's guilty plea and imposed a fifteen-month sentence for the alcohol-related parole violation. (*Id.*, pp. 5:10–6:8).

In Plaintiff's papers, he alleges that Defendant put "lies" in the Violation of Release Report regarding the GPS readings and curfew violations. (Dkt. No. 45, p. 2). Plaintiff further alleges that "on paper it may say the parole Judge violation was souly [sic] because I was drinking a [sic] alcohol beverage, but I know for a fact that it was because of all the lies he put in the report." (*Id.*). Plaintiff alleges that the curfew violations were the real reason his parole was revoked. (*Id.*). In his deposition, Plaintiff testified that he believed Defendant falsified the GPS tracking data because Defendant "wanted to enhance [Plaintiff's] parole violation by saying these things . . . . [Defendant's] trying to make it seem like - - the report was trying to make it seem like I was selling some type of narcotics . . . ." (Dkt. 42-4, p. 67:15–24). Plaintiff further testified that "I feel myself that [Defendant] was just trying to paint the picture that I was doing something crooked, or doing something out of line, just to enhance my parole violation." (*Id.*, p. 99:21–24).

6

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

Moreover, where plaintiff proceeds *pro se*, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a *pro se* party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

7

## IV. DISCUSSION

Liberally construing the Third Amended Complaint, Plaintiff alleges that Defendant provided false evidence against him in the form of GPS-tracking data, which resulted in the revocation of Plaintiff's parole and the loss of his liberty. (Dkt. No. 12, pp. 1–4). From this premise, Plaintiff appears to assert three potential claims: 1) a federal due process claim based on falsified evidence; 2) a federal due process claim based on defamation; and 3) a state law claim for defamation. In moving for summary judgment, Defendant argues that: 1) Plaintiff fails to establish a due process claim; and 2) Defendant is entitled to qualified immunity. The Court will consider each of Plaintiff's claims in turn.

### A. Federal Due Process Claim Based on Falsified Evidence

Plaintiff's first claim appears to allege a violation of his right to due process based on Defendant's use of false GPS-tracking evidence to revoke his parole. (Dkt. No. 12; *see also* Dkt. No. 42-4, p. 96:18–25).

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer acting in an investigating capacity." *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000); *see Zahrey v. City of New York*, 2009 WL 1024261, at *8 n.14; 2009 U.S. Dist. LEXIS 31893, at *30 n.14 (S.D.N.Y. Apr. 15, 2009) (noting that "evidence fabrication serves to both improperly charge and/or arrest a plaintiff as well as unfairly try him" and characterizing plaintiff's evidence fabrication claim as a claim for violation of procedural due process under the Fifth, Sixth, and Fourteenth Amendments). Undoubtedly, a parole officer may not rely on evidence that the officer knows to be false. *See Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016) (citing *Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998)). To support this sort of due process claim, a plaintiff must show, *inter alia*, that

8

an investigating official fabricated evidence that caused a deprivation of life, liberty, or property. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted).

In this case, it is undisputed that at all relevant times Plaintiff was a parolee subject to certain conditions of release, including an explicit prohibition from using, possessing, or purchasing alcoholic beverages. (Dkt. Nos. 42-2; 42-4, p. 72:23–25). Plaintiff acknowledged and agreed to comply with those required terms. (Dkt. No. 42-2). But the record is replete with undisputed evidence, including explicit admissions by the Plaintiff himself, that Plaintiff violated the condition not to use or possess an alcoholic beverage. (Dkt. No. 42-4, pp. 71:21–24, 72:23–73:10, 87:15–17, 93:3–4; *see also* Dkt. No. 42-6, ¶¶ 44–49). Specifically, Plaintiff admits that he possessed and consumed an alcoholic beverage on June 18, 2015. (Dkt. No. 42-4, pp. 72:23–73:25). The undisputed facts also show that Plaintiff's use of alcohol was the sole basis for the revocation of his parole; at the July 15, 2015 revocation hearing, Plaintiff pled guilty to the alcohol-related parole violation from June 18, 2015, and all curfew-related violations were dismissed with prejudice. (Dkt. Nos. 42-5, pp. 4:4–5:8; 42-3, p. 2). The administrative law judge accepted Plaintiff's guilty plea and imposed a fifteen-month sentence for the alcohol-related parole violation. (*Id.*, pp. 5:10–6:8).

Contrary to Plaintiff's claim, there is no evidence in the record to support his assertion that alleged curfew violations formed any basis for the revocation of Plaintiff's parole. Neither the GPS tracking information, nor the alleged curfew violations were even mentioned at Plaintiff's parole revocation hearing. (Dkt. No. 42-5). As part of the prehearing conference plea bargain, DOCCS agreed to withdraw all curfew-related charges with prejudice. (Dkt. No. 42-5, p. 5:5–8). Moreover, even if the GPS-tracking evidence was inaccurate, there is no evidence whatsoever that Defendant fabricated it or knew it was false, as discussed below. Thus, the

9

record fails to provide even a scintilla of support for Plaintiff's bald assertion that Defendant used the GPS tracking information to "paint a picture that [Plaintiff] was doing something crooked, or doing something out of line, just to enhance [Plaintiff's] parole violation." (*See* Dkt. No. 42-2, pp. 99:21–100:14).

In sum, the record shows that the sole basis for the revocation of Plaintiff's parole was his admitted use and possession of alcohol, an explicit violation of the conditions of his release. Plaintiff's baseless speculation that the real reason was falsified evidence regarding GPS tracking data is not sufficient to raise any genuine issue of material fact. Therefore, Plaintiff cannot sustain a federal due process claim based on falsified evidence.

### B. Federal Due Process Claim Based on Defamation

Plaintiff's second apparent claim is for defamation based on Defendant's alleged false statements regarding Plaintiff's curfew-related parole violations. (Dkt. No. 12, p. 5). It is well-established that defamation, even when committed by a state official, is a matter of state law, and does not ordinarily rise to the level of a constitutional violation. *Paul v. Davis*, 424 U.S. 693 (1976) (holding that reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the due process clause, and something more than simple defamation by the state official must be involved to establish a claim under Section 1983); *see also Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000). However, an action can be grounded in Section 1983 when that plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

To prevail on a state-imposed federal defamation claim, a plaintiff must show: 1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that is capable of

being proved false, and that he or she claims is false," and 2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. *Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004) (holding that defamation is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a Section 1983 action absent a showing of stigma along with a more tangible element of deprivation, a "stigma plus claim"). Further, "to bring a successful stigma-plus claim, the plaintiff also must demonstrate that h[is] liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) (citing *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003)).

Here, even if Defendant's statements regarding Plaintiff's curfew-related parole violations were false, there is no evidence whatsoever of a causal connection to a state-imposed burden, such as deprivation of liberty, as discussed above. Plaintiff cannot establish a defamation claim where the alleged stigmatizing charges were dismissed with prejudice, and therefore did not contribute to the harm that Plaintiff now claims. Moreover, the record shows that the parole revocation hearing afforded Plaintiff the opportunity to challenge all statements and conclusions that formed the basis for the DOCCS's charges against Plaintiff. (Dkt. No. 42-5). The transcript from the hearing shows that Plaintiff did not object to any of the information contained within DOCCS's violation of release report, nor did he make any allegations regarding Defendant's professional conduct when he pled guilty. (Dkt. No. 42-5).

Plaintiff, with the assistance of counsel, had every opportunity to challenge any statement or fact that he now contends are false, but failed to do so. The record shows that Plaintiff was aware that his guilty plea would result in his re-incarceration in exchange for the withdrawal of the remaining parole violation charges. (Dkt. No. 42-4, pp. 87:24–88:21; *see also* Dkt. No. 50,

11

p. 2). Therefore, the Court finds that Plaintiff's parole revocation hearing gave him all the process he was due. *See Segal*, 459 F.3d at 213; *see also Sloane v. Ruiz*, 2009 WL 1024237, at *2–3; 2009 U.S. Dist. LEXIS 31930, at *5–7 (S.D.N.Y. Apr. 14, 2009) (holding that a Section 1983 claim fails where a plaintiff alleges false statements by his parole officer yet agrees to a guilty plea without challenging those statements at a parole hearing).

Accordingly, Plaintiff cannot sustain a federal due process claim for defamation.

### C. Qualified Immunity

Further, Defendant contends that he is entitled to qualified immunity because he acted reasonably in his use of GPS tracking data in Plaintiff's case. (Dkt. Nos. 21, ¶ 9; 42-10, p. 12). Having found that Plaintiff cannot sustain a federal claim based on a constitutional violation, the Court need not address qualified immunity. Nonetheless, the Court agrees that qualified immunity would apply in this case.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Parole officers are entitled to qualified immunity when they perform their non-judicial and non-prosecutorial tasks, provided that they do not violate clearly established constitutional norms of which an objectively reasonable person should have been aware." *See Roberts v. Lapp*, 297 F. App'x 67, 69 (2d Cir. 2008) (citing *Scotto*, 143 F.3d at 111–13).

Plaintiff alleges that Defendant provided false evidence from the GPS-tracking unit which resulted in his parole revocation. (Dkt. No. 12). In his deposition, Plaintiff asserted that

12

Defendant falsified GPS tracking data in order to "enhance my parole violation." (Dkt. No. 42-4, p. 99:21–24).

However, Defendant submitted evidence that he relied upon GPS-tracking data provided by a third-party company, Satellite Tracking of People, LLC, which notifies a parole officer when a parolee has gone beyond established boundaries set within curfew hours. (Dkt. No. 42-6, ¶¶ 7, 16). Defendant also submitted the underlying data provided by the company. (Dkt. No. 42-7). Thus, even if the data was somehow incorrect, there is no evidence whatsoever that Defendant falsified the evidence. Plaintiff's baseless assertions to the contrary fail to raise an issue of fact. At most, Defendant mistakenly relied upon data from a GPS unit that was not working properly and gave false readings. Therefore, viewing the facts in the light most favorable to Plaintiff, Defendant would nonetheless be entitled to qualified immunity because it was objectively reasonable for him to believe his actions were lawful. *See Catanzaro v. Weiden*, 140 F.3d 91, 96 (2d Cir. 1998) ("Generally, public officials are entitled to qualified immunity where their mistaken belief or decision was objectively reasonable.").

### D. State Law Claim for Defamation

Finally, to the extent Plaintiff asserts a common-law claim for defamation under New York State law, the Court declines to assert jurisdiction over such claims, which are properly brought in state court. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment") (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)).

### V. CONCLUSION

For the reasons identified herein, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 42), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Third Amended Complaint (Dkt. No. 12) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

December 20, 2018
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge